BATCHELLER v. THOMSON.

(Circuit Court, S. D. New York. April 15, 1898.)

TRADE-MARK—USED BY TWO FIRMS IN DIFFERENT COUNTRIES.

Where a trade-mark is used by a manufacturer in England and also by a firm in the United States in which he is a partner, and its use began in both places at about the same time, and it came to identifying the article manufactured by the United States firm by use in its business for many

years, and the English manufacturer retired from the United States firm, the right to use it passed to his successors as part of the business, and he will not be allowed to use it in this country in a separate business of the same sort.

S. D. Cozzens, for complainant.
Hamilton Wallis, for defendant.

WHEELER, District Judge. Here are two suits and a cross cause which turn upon the right to use the words "Thomson's Glove-Fitting" as a trade-mark for corsets. Prior to 1867, Thomson and his brother were in business in France under the name of Thomson Freres, and in England under the name of W. S. & C. H. Thomson & Co.; and he, Charles H. Langdon, and Batcheller were in business in New York under the name of Thomson, Langdon & Co. A peculiar style of corsets was patented for Thomson Bros. in France, and called "Thomson's Corset Gant," meaning glove; and for Thomson, Langdon & Co. in the United States, and called "Thomson's Glove-Fitting." Thomson's brother died, and the English firm became W. S. Thomson & Co., and was continued, and he remained a member of the firm of Thomson, Langdon & Co. in New York until December 31, 1878. This trade-mark was used in its business at considerable expense, and with great success; and it became very important and valuable to the firm, in the United States, and its use there was not interfered with. Thomson retired under a written agreement with Langdon dated October 31, 1878, whereby he assigned to him:

"Also all interest and claims of said Thomson of, in, and to any and all trade-marks of any description whatever heretofore used by said Thomas, Langdon & Co. in the United States, with the full privilege and liberty to use the same during his lifetime in such manner as said Langdon may deem best; and also the full and undisturbed right to use, in any and all business in which said Langdon may be hereafter engaged, the business designation of Thomson, Langdon & Co., so long as said Langdon shall be personally engaged in the business in the United States now carried on by the said firm."

A written agreement between them, and agreed to by Batcheller, securing Thomson on the business of the firm for what Langdon was to pay Thomson, and a further written agreement between the three for the same purpose, contained a provision that:

"The said Langdon and Batcheller also both agree, and each for himself agrees, that so long as the new firm of which they two shall be partners shall continue to use for the new firm the business designation of Thomson, Langdon & Co., or stamp the name of Thomson upon their goods, the said new firm will entirely abstain from selling any goods manufactured by said new firm, of which the London business house of W. S. Thomson & Co. now make the same or similar goods to or for the markets of Canada or Great Britain."

On October 29, 1893, by an agreement signed by Langdon and delivered to Thomson, all accounts between Thomson and Thomson, Langdon & Co. were to be considered as settled, and the writing contained this further clause:

"(4) That in case I shall have any interest in any new co-partnership which may be formed after the expiration of the present co-partnership on the 1st January, 1885, or at any earlier date, for the transaction of business in corsets, busks, crinolines, or goods of that character, then Mr. William A. Nettleton shall be a partner in said business, and shall have for his services an interest therein

of 25% without the necessity of furnishing any capital to the same; and, in case I retire from the business, I hereby agree that the contract and agreement made between us on the 31st October, 1878, shall in that case become null and void, and that all the rights and privileges ceded by you to me shall then revert to you."

A new partnership was formed January 1, 1885. Nettleton became a member of it, and remained until 1888, having 25 per cent. of the profits, and Langdon remained till January, 1893, when Batcheller bought his interest, and has continued the business ever since; and Langdon is still living.

Thomson now claims that he originated this trade-mark in England, that it has been used in the business of the New York firm by his license, and that it is still within his control. Batcheller claims that it originated in the New York business, has always belonged to it, and came with it to him. Exactly how its use began is not clear; but it began in the New York firm and the English firm at about the same time. It came to identifying the corsets of the New York firm by its use in the business of that firm, and its importance and value as such an identifying mark must have grown up from such use there. It would belong with that business as it grew, and could not be legitimately used in a separate business of the same sort within the range of that business. Such other use would, to be of value, make it misrepresent other goods to be those of this business. When Thomson sold to Langdon he sold his interest in this trade-mark in this business, which was all that he assumed to, or could, sell, and which was his interest in the right to use it in the business of the New York firm in New York and the United States.

The agreement of Langdon of October 29, 1883, much relied upon to show a reversion of the right to Thomson, could not, in this view, operate to reconvey or transfer any right to this trade-mark separate from this business; and, as no interest in the business was thereby changed, there was nothing for the trade-mark to follow. Besides this, the provisions of that clause of that agreement seem to hinge upon what should be done upon the expiration of that partnership on January 1, 1885, or before, in respect to Langdon's remaining, and taking in Nettleton, and not upon Langdon's eventually retiring. Langdon remained, and Nettleton was received, as partners, and the contingency upon which there was to be a reversion to Thomson did not take place.

Langdon's right to the use of the trade-mark in this business seems to have followed his interest in the business on the sale to Batcheller, as good will would; and the right to the trade-mark now seems to belong to him with the business, as a part of it, where only it can lawfully as such a trade-mark belong. The trade-mark was registered by both, but as the right now passed upon relates only to use within the United States, and not in foreign commerce, the registrations are deemed to be wholly immaterial.

Decree for plaintiff in original bills, and dismissing cross bill.